# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br><br>SONYA D. HUGGINS<br>f/k/a SONYA D. HICKS,<br><br>Debtor | Chapter 13<br>Case No. 05-18826-RS |

**MEMORANDUM OF DECISION
REGARDING MOTION FOR RELIEF FROM STAY
(MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.)**

Before the Court is a stay relief motion seeking leave to foreclose a mortgage on the Debtor's residence. The Debtor opposes the motion. At issue is whether the entity seeking relief has the standing to do so and, if so, whether relief should be granted.

**Procedural Status**

On September 21, 2005, the Debtor commenced this Chapter 13 case. On December 30, 2005, Mortgage Electronic Registration Systems, Inc., acting as nominee for Full Spectrum Lending, Inc. ("MERS") ("Spectrum"), filed a stay relief motion seeking leave to foreclose a mortgage on the Debtor's residence ( "Property"). The Debtor opposed the motion. After notice and hearing, the Court denied the motion but required the Debtor to make monthly adequate protection payments to Spectrum ("Adequate Protection Order").

On September 12, 2006, MERS filed a second stay relief motion, again seeking to foreclose the mortgage on the Property and again acting as nominee of Spectrum. Once again, the Debtor opposes the motion. The Court held a non-evidentiary hearing on the motion on October 12, 2006, took it under advisement and now renders its decision on the issue of standing.

**Background**

a. *The Note and Mortgage*

The Debtor executed a promissory note and related mortgage, each dated April 22, 2003 ("Note") ("Mortgage"). The Note is in the original principal amount of $335,000 and matures on May 1, 2033. Spectrum is the payee of the Note and continues to hold it.

The Mortgage secures the Note. The Mortgage identifies MERS as mortgagee acting solely as nominee for Spectrum. In that capacity, as nominee mortgagee, and under the express terms of the Mortgage, MERS is granted full mortgage rights in respect of the Property, including the power of sale.

b. *MERS's Position*

MERS contends that the Note balance is $405,000 (comprised of principal, interest and charges) and that the Residence has a fair market value of $328,379 and a liquidation value of $306,625. MERS and the Debtor agree that the pre-petition arrearage on the Note is $53,401. They differ as to the post-petition arrears. MERS further contends that stay relief is warranted because (a) there is a lack of adequate protection and (b) the Debtor does not have an equity in the Property and the Property is not necessary to an effective reorganization.

c. *The Debtor's Position*

The Debtor disputes certain components of the Note balance (such as bankruptcy, foreclosure and inspection charges and fees), the amount of the post-petition arrears, and the value of the Property, which she claims may be worth as much as $436,000. The Debtor does *not* dispute the underlying loan obligation, the delivery, validity and enforceability of the Note

and Mortgage, or her pre-petition default.  The Debtor *does* contend that stay relief is not warranted because (a) MERS lacks standing to seek it and (b) the Property is irrebuttably presumed necessary for an effective reorganization.  The Debtor does not expressly contend that she has an equity in the Property.  However, a claim of equity may reasonably be inferred from the valuation amount she advances, and I draw that inference from the debt and valuation numbers proferred.

## Discussion

**a.**     *Grella*

The framework and scope of stay relief proceedings are well-established in this jurisdiction.  See *Grella v. Salem Five Cents Sav. Bank*, 42 F.3d 26 (1st Cir. 1994).  Stay relief implicates "the adequacy of protection for the creditor, the debtor's equity in the property, and the necessity of the property to an effective reorganization."  Stay hearings "do not involve a full adjudication on the merits of claims, defenses or counter-claims, but simply a determination as to whether a creditor has a colorable claim to property of the estate."  *Grella* at 42 F.3d at 31, 32; 11 U.S.C. §362(d).

**b.**     *Standing*

The Debtor contends that MERS, not having a property or ownership interest in the rights of Spectrum, is not the real party in interest, consequently cannot collect the Note or enforce the Mortgage *outside* bankruptcy, and thus lacks standing *in* bankruptcy to seek relief to do so.  These contentions misapprehend what MERS does, its rights under the Mortgage, the import of the Massachusetts foreclosure statute and the directive of *Grella*.

1.      *What MERS Does*

As noted by several courts, MERS administers an electronic registry to track the transfer of ownership interests and servicing rights in mortgage loans, serving as mortgagee of record and holding legal title to mortgages in a nominee capacity.  See *Mortgage Elec. Reg. Sys. v. Nebraska Dept. of Banking*, 270 Neb. 529, 530, 704 N.W.2d 784, 785 (Neb. 2005); *Taylor, Bean and Whitaker Mortg. Corp. v. Brown*, 276 Ga. 848, 583 S.E. 2d 844 (Ga. 2003); *In re Gemini Services, Inc.*, 350 B.R. 74, 82-83 (Bankr.S.D.Ohio 2006).[1]

2.      *MERS's Rights Under the Mortgage*

The Mortgage contains two specific and ultimately dispositive provisions relating to MERS.  *First*, the Mortgage states that "MERS is a separate corporation that is acting solely as nominee for [Spectrum] and [Spectrum's] successors and assigns.  MERS is the mortgagee under this Security Instrument."  A nominee is generally understood as a person designated to act in place of another.  See Black's Law Dictionary (8th ed. 2004).  See also *Kolakowski v. Finney*, 1983 Mass. App. Div. 360, 363 (1983) (elaborating on nominee definition); and *Lee v. Ravanis*, 212 N. E. 2d  480 (1965) (giving legal effect to action by and role of a nominee in a contract for the sale of real estate).  *Second*, the Mortgage states that the Debtor "does hereby mortgage, grant and convey to MERS (solely as nominee for [Spectrum] and [Spectrum's] successors and assigns) and to the successors and assigns of MERS, with power of sale . . . [the Property.]"  MERS then has the customary rights of a mortgagee under a Massachusetts mortgage and may act under the Mortgage on Spectrum's behalf.

---

[1] MERS also acts as assignee of notes and mortgages on its own account.  See *Mortgage Electronic Registration Systems v. Mahler*, 928 So. 2d 470 (Fla. 2006).

3.      *Massachusetts Foreclosure*

In Massachusetts, mortgage foreclosure may be effectuated (a) by entry or action or (b) by sale.  See G.L. c. 244 § 1 et seq.  Foreclosure under power of sale is governed by Section 14 of Chapter 244, which provides as follows:  "The mortgagee . . . or a person authorized by the power of sale . . . may, upon breach of condition and without action, do all the acts authorized or required by the powers."  G.L. c. 244, § 14 ("Section 14").  Thus, MERS as the mortgagee named in a recorded mortgage (albeit in a nominee capacity) is authorized to conduct a foreclosure by power of sale under Section 14.

4.      *Against MERS*

As noted, the Debtor's position is that MERS cannot seek stay relief in bankruptcy because it has no rights that it may enforce in respect of the Mortgage outside bankruptcy.

A recent New York state court decision provides *ostensible* support for the Debtor's position that MERS, as nominee, lacks standing to enforce the mortgage outside of bankruptcy. *LaSalle Bank Nat. Ass'n v. Lamy*, Slip Copy, 12 Misc. 3d 1191(A), 2006 WL 2251721 (N.Y. 2006).  In that case, the court denied a foreclosure action by an assignee of MERS on the grounds that MERS had no ownership interest in the underlying note and mortgage but rather acted as nominee and thus did not have the power or right *to assign*.  The court observed that

> this court and others have repeatedly held that a nominee of the owner of the note and mortgage, such as Mortgage Electronic Registration Systems, Inc. ("MERS"), may not prosecute a mortgage foreclosure action in its own name as nominee of the original lender because it lacks ownership of the note and mortgage at the time of the prosecution of the action.

*Lamy,* 12 Misc.3d at 1191.  In support of this observation, the court cites four cases, none of which holds that  MERS as nominee mortgagee named in a recorded mortgage may not prosecute

5

a foreclosure action on behalf of a noteholder: *Mortgage Elec. Registration Systems, Inc. v. Burek*, 4 Misc. 3d 1030(A), 798 N.Y.S. 2d 346 (N.Y. 2004) (factual disputes regarding default and standing); *Mortgage Elec. Registration Systems, Inc. v. Bastian*, 12 Misc. 3d 1182(A), 2006 WL 1985461 (N.Y. 2006) (factual disputes regarding alleged assignment); *Fairbanks Capital Corp. v. Nagel*, 289 A.D. 2d 99, 735 N.Y.S. 2d 13 (N.Y. 2001) (foreclosure by servicing agent recognized); and *Merscorp., Inc. v. Romaine*, 24 A.D. 3d 673, 808 N.Y.S. 2d 307 (N.Y. 2005) ("mortgages, assignments and discharges which name MERS as the lender's nominee or the mortgagee of record are acceptable for recording and indexing").[2] *Lamy* thus rests on a defect in the title of the assignee, arising from an inability of MERS, as nominee, to transfer the rights of the owner of the mortgage, not on a defect in the standing of MERS as nominee to foreclose on behalf of a valid holder of the mortgage note.

Neither *Lamy* nor *Merritt* requires a determination of lack of standing. *First*, MERS is acting as nominee for Spectrum, which holds the Note, and therefore there is no disconnection between note and mortgage. S*econd*, MERS is the record mortgagee under the Mortgage with the powers expressly therein set forth, including the power of sale under Section 14. *Third*, Section 14 expressly authorizes the exercise of sale powers by a mortgagee or person authorized to sell, precisely the position occupied by MERS. *Fourth*, the logic of a denial of MERS's foreclosure right as mortgagee would lead to anomalous and perhaps inequitable results, to wit, if MERS cannot foreclose though named as mortgagee, then either Spectrum can foreclose though not named as mortgagee or no one can foreclose, outcomes not reasonably or demonstrably intended

---

[2]There is support for the proposition that, under New York law, a foreclosing assignee of the mortgage who is not also the holder or assignee of the underlying debt cannot sustain a foreclosure action. See *Merritt v. Bartholick*, 36 N.Y. 44 (N.Y. 1867).

by the parties.

Hence, I am not persuaded that either the reasoning or holdings of *Lamy* or *Merritt* warrant denial of MERS's mortgage rights and of its standing to assert them in a stay relief motion.

5.  *Grella*

Under *Grella*, a party seeking relief from the automatic stay to exercise rights as to property must demonstrate at least a colorable claim to the Property. The Mortgage, the Massachusetts foreclosure statute, and MERS's status as nominee mortgagee establish to my satisfaction that MERS has standing under Massachusetts law to foreclose on Spectrum's behalf and therefore at least a colorable claim to the property within the meaning of *Grella*.[3] Accordingly, the Debtor's objection to the standing of MERS under the Mortgage to seek relief from the automatic stay in respect of the Property is overruled.

c.  **_Relief from Stay_**

Three matters remain for determination: the adequacy of protection, the Debtor's equity in the Property, and the Property's necessity to an effective reorganization. The parties disagree on each of these matters, and the record before the Court does not permit an informed determination of any of them. In particular, the Court notes several areas requiring evidentiary presentation, including the Debtor's compliance with the Adequate Protection Order, the current valuation of the Property, and the extent to which the Debtor's reorganization is in prospect.

---

[3] A full adjudication on the merits of that claim is not required in the context of the stay matter before me, and is not precluded by the decision herein.

In this latter regard, the Court rejects the argument that there is an irrebutable presumption that the Property is necessary to an effective reorganization.[4]  11 U.S.C. §362(d)(2)(b).  This provision of the statute presents two separate elements: *first*, whether the Property is necessary to reorganization; and *second,* whether an effective reorganization is in prospect.  As to the first element, it may be that the Debtor's sole objective in the Chapter 13 case is the retention of the Property and that the Property is her sole asset, and thus necessary to her reorganization.  Nonetheless, these facts must be demonstrated and are not presumed.  See Lundin, Chapter 13 Bankruptcy, ¶83-9 and ¶83-10, 3d. Edition (2000 and Supp. 2004).  As to the second element, while I am aware of the many formulations of the term "effective reorganization" employed by various courts, I understand the issue as, and will require evidence on, whether the Debtor has a reasonable possibility of successful reorganization within a reasonable time.  *In re Timbers of Inwood Forest Assocs., Ltd.* 484 U.S. 365 (1988).  This will require the Debtor to present evidence that (a) she has proposed a plan rooted in her actual financial experience and condition and based on a reasonably projected financial performance derived therefrom and (b) this plan is within the realm of reasonable achievement within a prescribed and discernable period of time.

Accordingly, an evidentiary hearing on the motion for relief from the automatic stay will be separately scheduled.

Date:  December 14, 2006

*(signature: Robert Somma)*
_____
Robert Somma
United States Bankruptcy Judge

cc:  Amy Lipman-White, Esq., for MERS
David Baker, Esq., for Debtor
Chapter 13 Trustee

---

[4]The Debtor cites *Grundy Nat'l Bank v. Stiltner*, 58 B.R. 593 (Bankr. Va. 1986).

8